# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2016, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
R.P., C.P. and A.A. *(Minor Children),*

and

L.B. *(Mother)*

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 7, 2016

Court of Appeals Case No.
48A02-1603-JT-482

Appeal from the Madison Circuit Court

The Honorable George G. Pancol, Judge

Trial Court Cause Nos.
48C02-1505-JT-35
48C02-1505-JT-36
48C02-1505-JT-37

**Robb, Judge.**

# Case Summary and Issue

[1] L.B. ("Mother") appeals the juvenile court's termination of her parental rights to her children R.P., C.P., and A.A. ("Children"), raising a sole restated issue: whether the juvenile court's termination order is supported by clear and convincing evidence. Concluding the termination order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] In the summer of 2012, the Indiana Department of Child Services ("DCS") received a report regarding the well-being of Mother's youngest child, A.A. DCS investigated the report and concluded there was sufficient probable cause to determine A.A. was a child in need of services ("CHINS") because the children were found dirty and one child stated Mother smoked marijuana, Mother was never home, and Mother rarely cooked for the Children. Thereafter, DCS implemented a program of informal adjustment.

[3] On August 16, 2013, DCS received a report regarding Mother's arrest for burglary; Mother committed the crime while A.A. was with her. Mother remained in jail for three months, and because no suitable caregivers were available to care for the Children, DCS removed the Children and placed them in foster care. DCS then filed a petition alleging the Children were CHINS. Following a fact-finding hearing at which Mother admitted the allegations set forth in the petition, the juvenile court adjudicated the Children as CHINS and

ordered Mother to participate in reunification services. Specifically, the juvenile court ordered Mother to obtain and maintain suitable housing and employment and to participate in home-based case work, home-based therapy, a family functional assessment, and supervised visitation. Mother's participation in these services was sporadic.

[4] On December 26, 2013, Mother was sentenced in her criminal case to four years in the Department of Correction, with the entirety of the sentence suspended to probation. In July 2014, Mother failed a drug screen and the trial court in her criminal case issued a warrant for her arrest. Knowing she violated a condition of her probation, Mother left town in an attempt to evade law enforcement. Mother was later apprehended. The trial court revoked Mother's probation and ordered her to serve a portion of her remaining sentence on house arrest. In November 2014, Mother—while on house arrest— failed another drug screen, cut off her ankle monitoring device, and left town. Mother was not apprehended until March 2015 and was incarcerated in the county jail until May 2015. The trial court then ordered Mother to serve the remainder of her sentence at a work release facility.

[5] On May 4, 2015, DCS filed a request to end Mother's reunification services and a petition for termination of Mother's parental rights. The juvenile court granted the request to end services and scheduled an evidentiary hearing on the termination petition for September 15, 2015. At the evidentiary hearing, both the court-appointed special advocate ("CASA") and the DCS family case manager testified Mother's parental rights should be terminated, relying in part

on Mother's sporadic participation in services, criminal history, inability to comply with the terms of probation and house arrest, and the improved attitude, stability, and lifestyle the Children enjoyed in their foster homes. Mother acknowledged she did not participate in services as she should, was confined to work release, and could be sent to the Department of Correction if she failed to comply with the terms of her work release. However, Mother believed she was making the rights changes at the time of the hearing. Specifically, she stated she had been working as an assistant manager at Subway for over three months and was taking classes to attain her GED. Mother's work release case manager testified Mother had not yet failed any drug screens or violated any policies or procedures. The case manager further explained Mother paid ahead on rent, completed a substance abuse evaluation, and completed numerous classes related to substance abuse, budgeting, and employment. At the conclusion of the hearing, the juvenile court took the matter under advisement.

[6] Nearly six months later, the parties convened for a review hearing. At the beginning of the hearing, the juvenile court stated it intended to terminate Mother's parental rights, but wanted to give Mother one last opportunity to admit any additional evidence showing why her parental rights should not be terminated. Mother stated her work release had been modified to house arrest and she had rented a house. Mother further explained she still worked at Subway as an assistant manager.

[7]     Following the review hearing, the juvenile court issued an order terminating

Mother's parental rights, finding in relevant part,

> 2. On or about August 16, 2013, Mother was arrested for
> burglary while [A.A.] was with her. Mother was subsequently
> incarcerated, and the children had no willing and/or available
> caregivers. On August 20, 2013, Mother entered an admission to
> the allegations in DCS' Verified Petition Alleging Children are
> Children in Need of Services.
> 3. The children were found to be Children in Need of Services
> . . . and a dispositional order was issued on October 9, 2013. The
> children have remained out of the parents' care continuously
> since that date.
> 4. Pursuant to dispositional orders, Mother was offered the
> following services: home-based therapy, home-based casework,
> family functional assessment, substance abuse evaluation,
> random drug screens and visitation.
> * * *
> 6. Mother failed to demonstrate an ability to remedy her stability
> issues. Mother was provided home-based casework in order to
> find employment, find housing, develop life skills and develop
> parenting skills. Mother participated in home-based case work
> during the CHINS case but demonstrated patterns of
> inconsistency in attendance and participation. Mother stopped
> participating in home-based casework in November 2014.
> Mother was unable to secure stable housing during the course of
> the underlying CHINS case. In the past five (5) years, Mother
> resided at approximately thirteen (13) residences and was evicted
> twice. At the time of the Termination Hearing, Mother was
> residing at a work release facility and did not have a place to
> reside upon her release. Due to her inconsistency in attendance
> and failure to continue services past November 2014, Mother
> was unable to attain her home-based case goals regarding life and
> parenting skills.
> 7. Mother failed to demonstrate an ability to remedy her
> substance abuse issues. Mother was first offered home-based

therapy and random drug screens by DCS in August 2012 through the implementation of an informal adjustment. DCS continued to offer Mother a substance abuse evaluation, home-based therapy and random drug screens throughout the existence of the underlying CHINS case. Mother participated in the substance abuse evaluation which recommended a family functional assessment, home-based therapy, home-based casework and random drug screens. Mother had approximately three years to address her substance abuse issues. Mother failed to follow any recommendations from her substance abuse assessment.

8. Mother failed to demonstrate an ability to remedy and/or improve her mental health. Mother was offered home-based therapy during the course of the CHINS case. The goals of home-based therapy were to work through past traumatic incidents in Mother's life, to develop coping skills and to develop coping skills relating to substance use. Due to Mother's inconsistency in attendance and participation in home-based therapy, Mother was unable to meet any of her therapeutic goals. Mother voluntarily stopped participating in home-based therapy in November 2014.

9. Mother failed to demonstrate a commitment to her children. The last time Mother visited her children was in November 2014. Prior to November 2014, Mother demonstrated patterns of inconsistency in her attendance and participation in visitation. Mother arrived to visitations late, left visitations early and failed to attend visitations without notice. [A.A.] has demonstrated severe behavioral issues linked to his mother's disappearance and instability in his life. Mother is aware of the effect her inconsistency in visitation had on her children.

10. Mother attended approximately seven (7) to nine (9) child and family team meetings during the course of the underlying CHINS case. Mother understood what she needed to accomplish in order for reunification to occur. Mother had three years to accomplish the reunification goals. Mother did not benefit from the services offered to her by DCS.

11. Prolonging permanency for these children is detrimental to

their well-being.  All three children are engaged in home-based case work and therapy.  [R.P.] and [C.P.] participate in services to develop their life skills.  All three children struggle with anxiety regarding instability in their lives.  Prolonging permanency for these children will have a negative effect on their mental health.

12.  The Court accepts the recommendations made by the DCS family case manager and CASA that the continuation of the parent-child relationship poses a threat to the children's well-being.

13.  The Court accepts the recommendations made by the DCS family case manager and CASA that termination is in the children's best interest.

Appellant's Appendix at 43-45.  Mother now appeals.  Additional facts will be added as necessary.

# Discussion and Decision

## I.  Standard of Review

When we review a termination of parental rights, we neither weigh the evidence nor judge witness credibility, *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011), and we consider only the evidence and reasonable inferences most favorable to the judgment, *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013).  As required by statute, the juvenile court entered findings of fact and conclusions.  *See* Ind. Code § 31-35-2-8(c).  We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment.  *In re C.G.*, 954 N.E.2d at 923.  "We will set aside the court's

judgment terminating a parent-child relationship only if it is clearly erroneous. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *S.L.*, 997 N.E.2d at 1123 (citation omitted).

## II. Termination Order

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ." *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (alteration in original) (citation omitted). Indiana Code section 31-35-2-4(b)(2) sets out what must be proven in order to terminate parental rights, which we quote in relevant part:

> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> * * *
> (C) that termination is in the best interests of the child . . . .

The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). If a juvenile court determines that the allegations of the petition are true, then the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

Mother contends the juvenile court's termination order was clearly erroneous.[1] Specifically, she claims DCS failed to present clear and convincing evidence to establish there is a reasonable probability the conditions resulting in the Children's removal will not be remedied, a reasonable probability the continuation of the parent-child relationship poses a threat to the well-being of the Children, and that termination is in the best interests of the Children.

## A. Remedy of Conditions

"In determining whether the conditions that led to a child's removal will not be remedied," the juvenile court "must judge a parent's fitness to care for her child at the time of the termination hearing and take into consideration evidence of changed conditions." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). "[I]t is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside of the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. The juvenile court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *In re A.B.*, 924 N.E.2d at 670 (citation omitted). However, the trial court's findings cannot focus solely on historical conduct absent findings as to the parent's

---

[1] We note Mother does not challenge any findings of fact and we therefore accept those as true. *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (noting a parent waived a claim the juvenile court's findings or conclusions were clearly erroneous by failing to specifically challenge the court's findings or conclusions), *trans. denied*.

current circumstances or evidence of changed conditions. *In re C.M.*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011). The juvenile court may also consider the services the State offered to the parent and the parent's response to such services. *In re A.B.*, 924 N.E.2d at 670.

[12] The findings establish the Children were initially removed from Mother's care because Mother committed burglary while with A.A., Mother was arrested, and no suitable caregivers were available for the Children. The juvenile court continued the Children's removal due to Mother's sporadic participation in services, Mother's drug use, Mother's violation of the terms of her probation and house arrest, and Mother leaving town twice to evade law enforcement. In maintaining DCS did not meet its burden, Mother argues the juvenile court focused solely on her past parental shortcomings and failed to consider evidence of her current circumstances and changed conditions, namely her progress through work release. Mother points to evidence at the time of the termination hearing that she had not failed any recent drug tests, she was working toward her GED, she attended several classes, including substance abuse classes, and had maintained stable employment. Mother also points to evidence admitted at the review hearing that her work release had been modified to house arrest, she rented a home, and continued to work at Subway.

[13] We acknowledge the trial court's findings must contain evidence of Mother's current circumstances and changed conditions and the juvenile court did not enter any specific findings pertaining to Mother's current circumstances except for the finding that Mother was confined to work release. However, we further

note a juvenile court has discretion to weigh such evidence against "evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). A juvenile court also has the discretion to disregard the efforts a parent makes only shortly before termination and to weigh more heavily a parent's history of conduct prior to those efforts. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[14] We commend Mother for her conduct during recent periods of work release and house arrest. We are mindful, however, the juvenile court was within its discretion to consider the fact Mother's progress only occurred a few months prior to the termination hearing and while Mother was confined to work release and house arrest, both of which carried the threat Mother could be incarcerated for any misconduct. The juvenile court weighed Mother's recent accomplishments while on work release and house arrest against her conduct while on informal adjustment, her criminal and substance abuse history, her inability to secure stable housing, and her lack of participation in reunification services.[2] As to services, DCS offered reunification services years before the

---

[2] This is evidenced by the juvenile court giving Mother an additional opportunity to update the court on her progress and further evidenced when it stated,

> This has been a very difficult decision for me. I do think that the Department is correct. That at the time of the hearing and even know [sic], I do feel . . . what has happened that caused the removal and everything [that] has happened since, that even though [Mother], I congratulate you on what you have done to get yourself on your feet and I hope you keep doing it and keep

termination hearing and it is clear the juvenile court considered Mother's historical responses to such services. Mother did not begin to take consistent steps towards a better lifestyle *until* she was confined to work release—only four months prior to the termination hearing. It was Mother's responsibility to rehabilitate herself during the CHINS proceedings and prior to DCS filing a petition to terminate her parental rights. *See Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1230 (Ind. Ct. App. 2007). Mother failed to do so and we cannot say Mother's current conduct would remain consistent but-for the court's current supervision.

[15] Further, the evidence establishes Mother was placed on probation and house arrest and violated the terms of each, all while she was supposed to be completing services to reunify with the Children. In addition, not only did Mother violate the terms of her probation and house arrest, she left town each time in an attempt to evade law enforcement. Such a decision required her to cease participation in services, including visitation with her Children. It is clear Mother put herself before her Children's interests. We conclude DCS presented sufficient evidence to show a reasonable probability the conditions leading to

---

yourself out of any further trouble . . . . [F]or your life, that at this point, I don't think that the issues that were presented to me have been or can be remedied . . . .

Transcript at 110.

the Children's removal or to their continued placement outside the home will not be remedied.[3]

## B. Best Interests of the Children

[16] Mother argues DCS failed to prove termination of her parental rights was in the Children's best interest. "In determining what is in the best interests of the child, the [juvenile] court is required to look beyond the factors identified by the DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).

> The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (citations omitted), *trans. denied*.

[17] As noted above, DCS presented evidence sufficient to show a reasonable probability the conditions resulting in the Children's initial and continued

---

[3] Mother also contends the juvenile court erred in finding continuation of the parent-child relationship posed a threat to the Children's well-being. However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element in that subsection be proven to support termination of parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). Because we conclude the evidence is sufficient to show a reasonable probability the conditions resulting in the Children's removal will not be remedied, we need not determine whether the juvenile court erred in concluding continuation of the parent-child relationship posed a threat to the Children's well-being.

removal will not be remedied. In addition, both the CASA and family case manager testified at the evidentiary hearing that Mother's parental rights should be terminated. We further note permanency is a vital consideration in determining a child's best interest. *In re G.Y.*, 904 N.E.2d at 1265. Here, the findings indicate Mother and the Children lived in thirteen different residences over a five-year period. In addition, Mother has not had visitation with the Children since November 2014. The Children have been in foster care since August 2013 and both the CASA and family case manager testified Mother's reunification with the Children would negatively affect the Children because the Children have thrived in their foster homes. We conclude DCS presented clear and convincing evidence from which the juvenile court could conclude termination of Mother's parental rights was in the Children's best interest.

# Conclusion

[18] DCS established by clear and convincing evidence the elements necessary to support the termination of Mother's parental rights. The judgment of the juvenile court terminating Mother's parental rights is affirmed.

[19] Affirmed.

Mathias, J., concurs.

Brown, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of:<br>R.P., C.P. and A.A. *(Minor Children)*,<br>and<br>L.B. *(Mother)*,<br>*Appellant-Respondent*,<br><br>v.<br><br>The Indiana Department of Child Services,<br>*Appellee-Petitioner*. | Court of Appeals Case No.<br>48A02-1603-JT-482 |

**Brown, Judge, dissenting.**

I respectfully dissent from the majority's decision to affirm the juvenile court's termination of Mother's parental rights in that the juvenile court failed to make any findings or otherwise consider Mother's efforts at remediation presented either at the September 15, 2015 hearing or at the review hearing held six months later. In determining whether the conditions that resulted in the children's removal will not be remedied, this Court engages in a two-step

analysis. *In re E.M.*, 4 N.E.3d 636, 642-643 (Ind. 2014). First, we identify the conditions that led to removal, and second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* at 643. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions, balancing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

[21] In this matter, the Children were removed following Mother's arrest for burglary in 2013. Evidence was presented that, at the time of the final review hearing, Mother had rented a home and was serving the remainder of her sentence on house arrest. She also had held a job as an assistant manager at Subway for nine months and had been taking classes to obtain her GED. Mother's work release case manager testified at the termination hearing that Mother had not failed any drug tests or violated any policies or procedures, had completed a substance abuse evaluation, had completed classes related to substance abuse, budgeting, and employment, and even paid ahead on her rent. The court's termination order overlooked such evidence and did not include it in its findings, instead focusing almost exclusively on evidence derived from the underlying CHINS case.

[22] Terminating a parent-child relationship is of such importance that we must be convinced the trial court has based its judgment on proper considerations and did so based upon clear and convincing evidence. *See, e.g.*, *Parks v. Delaware*

*Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1280-1281 (Ind. Ct. App. 2007). I do not believe that this court can make such a determination based on the trial court's findings. Although the termination order addressed Mother's past parental shortcomings in its findings of fact, the court failed to make any findings regarding her fitness to care for the Children at the time of the termination hearing. I believe that the trial court's focus on historical conduct, absent any factual findings as to Mother's current circumstances or evidence of changed conditions, is akin to terminating parental rights in order to punish the parent. *See, e.g.*, *In re C.M.*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011). I would reverse the court's termination order and remand for the court to consider and make findings concerning mother's efforts at remediation and their impact on these proceedings. *See K.E. vs. Ind. Dept. of Child Servs.*, 39 N.E.3d 641, 649, 652 (Ind. 2015) (holding that the father's release from prison was impending and that he has made substantial efforts toward bettering his life through programs available during his incarceration, that the court did not balance such recent improvements against his habitual patterns of conduct in its order, and that accordingly it was not proven by clear and convincing evidence that the father could not remedy the conditions leading to the child's removal, and reversing the court's termination order).