In the Matter of the Involuntary Termination of the Parent–Child Relationships of C.M., G.M., and R.M., Children, and the Parents,

A.M. (Mother) and C.M. (Father), Appellants–Respondents,

v.

Indiana Department of Child Services, Dearborn County Office, Appellee–Petitioner.

No. 15A01–1104–JT–204.

Court of Appeals of Indiana.

Dec. 8, 2011.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant A.M.

Robert J. Henke, DCS Central Administration, Indianapolis, IN, Matthew K. Hagenbush, DCS, Dearborn County Office, Lawrenceburg, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

A.M. ("Mother") appeals an order terminating her parental rights to C.M., G.M., and R.M. ("the Children"), upon the petition of the Dearborn County Department of Child Services ("the DCS"). We reverse the termination of Mother's parental rights.

### Issue

Mother presents a single issue for appeal: Whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination of parental rights.

### Facts and Procedural History

Mother and her husband ("Father")[1] had three children together, C.M. (born in 2005), G.M. (born in 2006) and R.M. (born in 2007). The DCS became involved on February 24, 2010, when Father, who had discontinued his medication for bi-polar disorder, was charged with battering the Children.[2] At that time, Mother was incarcerated in the Dearborn County Jail on a theft charge and probation violation. The Children were adjudicated Children in Need of Services ("CHINS"). In the fall of 2010, the Children were placed back in Mother's home for "a trial home visit." (App. 316.)

Mother, then living apart from Father, received home-based family services and psychological counseling.[3] According to DCS case manager Heather Hardman ("Hardman"), Mother was "for the most part fairly cooperative." (Tr. 29.) She was consistent with visitation, at times arriving for visits immediately after "working 3rd shift all night." (App. 321.) However, Mother became involved with J.H. ("Boyfriend"), whose criminal history

---

1. Father is not an active party to this appeal, and we therefore summarily affirm the termination of Father's parental rights.

2. He was initially charged with Strangulation also, but this charge was dismissed.

3. After being charged with battery of his children in Indiana, Father went to Florida, where he was incarcerated for battery upon his father. Father was also constrained by a No Contact order with regard to the Children.

caused concern for DCS. Mother and Boyfriend signed a safety plan but Hardman believed that Mother did not follow the restriction that Boyfriend was not allowed to reside in the home with the Children.

On December 21, 2010, Mother tested positive for oxycodone. Mother, pregnant with twins, reported that she had been experiencing back pain and had taken a pill from an expired prescription, upon her physician's advice. Mother reluctantly signed a release so that her physician could be interviewed, whereupon Mother's physician denied advising Mother to take the prescription medication at that time.[4]

On January 22, 2011, Hardman was dispatched to Mother's apartment, where a search warrant was being executed. When marijuana was discovered, Boyfriend was arrested and charged with Dealing Marijuana. Mother was charged with Maintaining a Common Nuisance.[5] The Children were removed and placed in foster care. On January 25, 2011, the DCS requested that the permanency plan be changed from reunification to termination of parental rights and adoption.

On February 4, 2011, the DCS petitioned to terminate Mother's and Father's parental rights. The court conducted an evidentiary hearing on April 21, 2011. The DCS presented evidence that Mother had convictions for conversion and maintaining a common nuisance, and that she had failed the December 2010 drug screen. DCS witnesses described Mother's response to parenting services and her apparent acquiescence in Boyfriend's activities. Hardman, the Children's Guardian ad Litem, and their former foster mother each recommended termination of parental rights.

Mother testified that she was residing alone with her newborn twins in a three-bedroom trailer in Ripley County and that Ripley County DCS employees had visited the residence and declined to initiate CHINS proceedings. Mother also presented documentary evidence that she had been voluntarily enrolled, since February 7, 2011, in an Intensive Outpatient Program at East Indiana Treatment Center, Inc. Her drug screens had been negative throughout the outpatient treatment. According to Mother's testimony, her source of income was unemployment benefits.

On April 25, 2011, the court entered its findings of fact, conclusions of law, and judgment terminating Mother's and Father's parental rights. This appeal ensued.

**Discussion and Decision**

*A. Standard of Review*

■■■ This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

■■■ The trial court entered sua sponte findings of fact and conclusions of law. Sua sponte findings control as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Parks v. Delaware*

---

4. The physician opined that one tablet would not endanger Mother's pregnancy.

5. As a result of this charge and the violation of her probation for the earlier theft charge, Mother was placed on probation for two years and received 120 days home incarceration.

*County Dep't of Child Servs.*, 862 N.E.2d 1275, 1278 (Ind.Ct.App.2007). A trial court is not statutorily required to enter findings when involuntarily terminating a parent-child relationship. *Id.* Nevertheless, when a trial court has, under Indiana Trial Rule 52, made findings of fact and conclusions of law in a parental termination case, we apply a two-tiered standard of review. *Id.* at 1278–79.

We first determine whether the evidence supports the court's findings and, second, whether the court's findings support the judgment. *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 147 (Ind.2005). A judgment is "clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *Id.*

### B. Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Id.* The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind.Ct.App.1999), *trans. denied.*

Indiana Code Section 31–35–2–4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

■■ If the court finds the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind.Code § 31–35–2–8(a). The trial court must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind.Ct. App.2001), *trans. denied.* Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide

support, and lack of adequate housing and employment. *A.F. v. Marion County Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind.Ct.App.2002), *trans. denied*. Ultimately, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d at 509.

## C. Analysis

■ Mother does not challenge the court's determination pursuant to Indiana Code Section 31–35–2–4(b)(2)(A) (removal from parent) or (D) (satisfactory plan). However, she challenges the determinations relating to Indiana Code Section 31–35–2–4(b)(2)(B) (conditions will not be remedied or relationship poses a threat to children's well-being), and (C) (best interests of the children). Indiana Code Section 31–35–2–4(b)(2)(B) is written in the disjunctive, and therefore the court needed to find that only one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d at 209. In determining what is in the best interests of the child, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.B.*, 887 N.E.2d 158, 167 (Ind.Ct. App.2008).

The court's findings of fact include findings that Mother was "generally cooperative with DCS until the children went home with mother on [a] trial home visit, where mother failed a drug screen and was evasive about her use and the reasons for it." (App. 363.) Mother's participation lev-

el was characterized as "moderate" and the court observed that her progression had "ebbed and flowed." (App. 363.) The findings of fact recited circumstances surrounding the two removals, and the court also acknowledged that the Children's caseworker, former foster mother, and Guardian Ad Litem recommended termination of parental rights.

■ The findings of fact have evidentiary support in the hearing record. However, the court made no factual determinations with respect to evidence of changed conditions.[6] The limited findings fall short of supporting the conclusion of law that "DCS has established by clear and convincing evidence that the reasons for continued placement outside the home will not be remedied and the continuation of the parent-child relationship poses a threat to the well-being of the child[ren]." (App. 366.)

■ The Children were initially removed because Father, who suffers from bipolar disorder, discontinued his medication and battered the Children while Mother was incarcerated. They were subsequently removed when Mother was arrested a second time and the State alleged that Boyfriend had been selling marijuana. Historically, although Mother has apparently not directly abused her children, she has been unable or unwilling to protect them from her partners' illegal conduct. This failure is the condition leading to removal and posing a threat to the Children. It was incumbent upon the trial court to determine whether the DCS had established, by clear and convincing evi-

---

6. The sole "finding of fact" addressed to current conditions consists of the court's observation that Mother "*stated* she was currently in treatment for substance abuse." (App. 365.) (emphasis added.) The court makes no determination as to whether Mother's testi-

mony and documentary evidence were found to be credible. A recitation that a witness testified in a particular way does not equate to a finding of basic fact. *Parks v. Delaware County Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind.Ct.App.2007).

dence, a reasonable probability of non-remediated conditions or a continuing threat.

Mother testified with regard to her current living conditions. According to Mother, she lives alone with her infants, she has a current source of income, her home has been deemed suitable by the Ripley County DCS and she is in voluntary, intensive substance abuse treatment. In short, Mother claimed to have accomplished each of the things required to remedy the prior conditions and accomplish reunification goals. Her testimony was not directly contradicted. The trial court made no determination as to whether Mother's testimony was credible or lacking in credibility.

Mother's past parental shortcomings (yelling, some criminal history, failing a drug screen, and prioritizing Boyfriend over Children) were thoroughly addressed in the findings of fact, conclusions of law, and judgment. However, as previously observed, the trial court is to judge parental fitness at the time of the termination hearing, while taking into consideration the evidence of changed conditions. *In re J.T.*, 742 N.E.2d at 512. Here, the court's focus on historical conduct, absent factual findings as to Mother's current circumstances or evidence of changed conditions, is akin to terminating parental rights to punish the parent. And, without more, the findings are insufficient to establish each element necessary to support the conclusion that termination is warranted in this case.

■■■ Moreover, the court's conclusions of law included language suggesting that Mother had a burden of proof she does not have.[7] Indiana Code Section 31-35-2-4 requires the DCS to establish, by clear and convincing evidence, each of the requisite elements to support the termination of parental rights. A prima facie showing necessarily includes some evidence of current conditions. Here, the DCS did not present a prima facie case of a reasonable probability either that the conditions leading to removal will not be remedied or that Mother poses a threat to the Children; thus, Mother was not required to produce evidence in order to withstand the termination petition.

■■■ Although a trial court is not statutorily required to make findings in termination cases, "once the trial court walks down the path of making findings, it is bound under Indiana Trial Rule 52(A) to make findings that support the judgment." *Parks*, 862 N.E.2d 1275, 1281 (Ind.Ct.App. 2007). The findings do not support the trial court's judgment. Accordingly, we reverse the judgment of the trial court terminating Mother's parental rights to C.M., G.M., and R.M.

Reversed.

BAKER, J., concurs.

DARDEN, J., concurs in result.

7. The court noted "little indication in the evidence presented that mother would be able to remedy her issues quickly enough" and "nor is there anything on the record to indicate she would or could gain the skills necessary to deal with the children's aggressive behaviors in a healthy manner."