## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 13 2017, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT –
MOTHER

Matthew J. McGovern
Anderson, Indiana

ATTORNEY FOR APPELLANT –
FATHER

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

B.L.D.H. (Minor Child),

and

D.D. (Mother) & B.H. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

January 13, 2017

Court of Appeals Case No.
22A05-1606-JT-1325

Appeal from the Floyd Circuit Court

The Honorable J. Terrence Cody, Judge

Trial Court Cause No.
22C01-1508-JT-517

**Baker, Judge.**

[1] D.D. (Mother) and B.H. (Father) (collectively, Parents) appeal the trial court's order terminating their parent-child relationship with their child, B.L.D.H. (Child). Mother and Father argue that there is insufficient evidence supporting the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born in November 2013. Both Father and Mother have had substance abuse issues for many years. Father's substance abuse began when he was run over by a train, an accident that led to the amputation of both of his legs.

[3] In January 2014, Father battered Mother. This resulted in a protective order, which prohibited Father from being in contact with Mother or Child. Protective order notwithstanding, in February 2014, Father and Mother went to a hospital together because of back pain that Father was experiencing. Child was at Father's brother's house, where Child was staying the night. After observing symptoms of drug use, the hospital called an Indiana Department of Child Services (DCS) family case manager (FCM). The FCM noted that Parents were unable to stay conscious or communicate and that they were shaking. When DCS went to pick up Child from the relative's house, the relative informed DCS that Child had been covered in feces from head to toe when he was dropped off. DCS also decided against placing Child with Father's brother because he had a prior conviction for operating a vehicle while

intoxicated.  Instead, Child was placed with Mother's niece, where he has remained ever since.

[4]  DCS filed a petition alleging that Child was a child in need of services (CHINS) based upon Father's domestic violence, his violation of the protective order, and Parents' substance abuse.  At an April 10, 2014, hearing, Father waived the factfinding process and Mother admitted to the CHINS allegations.  In particular, Mother admitted that she had taken more than the prescribed amount of her medication and that she was living with Father in violation of the protective order.

[5]  The trial court issued a dispositional decree on June 26, 2014.  It ordered Parents to comply with several requirements, including the following:  contact the FCM weekly; notify the FCM of any arrests; allow the FCM to see the child and home; enroll in courses recommended by the FCM; keep all appointments; obtain suitable housing and stable income; avoid drugs, alcohol, and illegality; submit to random drug screens; and attend all scheduled visitations with Child.

[6]  Mother was also ordered to comply with the terms of probation stemming from previous convictions.  In September 2007, she had been convicted of theft as a Class D felony.  Her violations of the terms of probation associated with this first conviction had already been dismissed pursuant to a plea agreement regarding a second conviction, this time for Class B felony dealing in a controlled substance in May 2011.  Before the June 2014 dispositional decree

was entered, Mother had already violated her new terms of parole and, on March 19, 2014, had been sentenced to sixty days in jail.

[7] Mother's participation in services has been inconsistent, perhaps owing to the nearly fifteen months she spent in jail between Child's removal in February 2014 and the eventual termination of parental rights (TPR) hearing held on May 2, 2016. Even when she was not in jail, she did not consistently participate in services, attend her random drug screens, remain drug free, or maintain contact with DCS. She also failed to attend many of her scheduled visitations with Child.

[8] Likewise, Father did not participate in services. DCS recommended drug therapy, but he has not met with a therapist or caseworker since July 2014. DCS referred him to another substance abuse evaluation, but he was discharged from the program in April 2015 because of his noncompliance. Since the dispositional decree, Father has continued to use drugs, to drink, and has tested positive for methamphetamine as recently as one month before the termination hearing. Father has only visited Child thirteen times during the pendency of the CHINS case, and Child does not recognize him as a father figure. On one occasion, Child threw a tantrum because he wanted to be returned to his relative caregiver. At the TPR hearing, Father was unable to remember Child's birthdate.

[9] Neither Mother nor Father will be in a position to care for Child in the immediate future. On August 21, 2015, Mother's probation was revoked after

failing a drug screen and having contact with Father. She was sentenced to four years imprisonment, with the last six months to be served at a halfway house. She is currently in prison, scheduled to be released in August 2017. Father has been unable to maintain housing through the entire pendency of the CHINS case and is currently living with his brother.

[10] On August 31, 2015, DCS filed a petition seeking the termination of Parents' rights. On May 2, 2016, the trial court held a TPR hearing. An FCM testified that Parents were not likely to fix their substance abuse issues because they had failed to demonstrate any long-term change in the entire two-year CHINS case. Another FCM noted that Mother has only been able to maintain sobriety while incarcerated, and so would likely relapse upon her release. A court appointed special advocate (CASA) likewise opined that Parents would not be able to provide Child with a safe and stable home. Both FCMs testified that termination would be in Child's best interest, as his current caregivers would like to adopt him.

[11] On June 7, 2016, the trial court ordered that Parents' parental rights be terminated. It denied DCS's motion to issue findings of fact and conclusions of law, but issued a series of both sua sponte. The termination order stressed Parents' repeated incarcerations and drug abuse, and noted that neither would be in a position to take care of Child in the immediate future. While acknowledging that Parents were currently expressing the desire to turn their lives around, the trial court found that Parents "have made a conscious decision

to not make any attempt to comply with the terms of the Dispositional Decree."
Appellant's App. p. 47. Parents now separately appeal.

## Discussion and Decision

[12] Both Parents argue that the evidence is not sufficient to support the trial court's decision. Mother also argues that the trial court's findings of fact do not support its judgment.

[13] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229–30.

[14] Indiana Code section 31–35–2–4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[15] Father argues that there is not sufficient evidence to prove that termination is in the best interests of Child. Mother argues the same and also argues that there is insufficient evidence to prove that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied.

[16] Child was removed from Parents in February 2014 based, in part, on Parents' abuse of drugs. Child had been dropped off, covered from head to toe in feces, at a relative's house so that Parents could go to the hospital; once Parents were there, they were so intoxicated that they could not communicate or stop shaking. Both have failed to complete the substance abuse classes offered during the CHINS case and both have admitted to continued drug use. Indeed, Mother is currently in prison because her probation was revoked after she failed a drug screen, and Father tested positive for methamphetamine use just one month prior to the termination hearing. Given that Child was removed due to Parents' drug use, and that Parents were either imprisoned for drug use or currently using drugs at the termination hearing more than two years later, there was sufficient evidence that the condition that led to Child's removal will not be remedied. And the same evidence regarding Parents' inability to stop abusing drugs also suffices to show that termination was in the best interests of Child.

[17] Mother attempts to analogize her situation to cases that have held that the evidence supporting a TPR is insufficient where the trial court's findings focus on historical shortcomings while ignoring changed conditions, *In re C.M.*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011); or that incarceration alone is an insufficient basis for terminating parental rights, *In re G.Y.*, 904 N.E.2d 1257, 1264-66 (Ind. 2009); or that a parent's rights "may not be terminated solely because there may be a better home available for that child." *In re R.A.*, 19 N.E.3d 313, 321 (Ind. Ct. App. 2014).

[18] We do not find these cases analogous to Mother's situation. While *C.M.* held that a trial court cannot ignore changed conditions, the trial court here noted that Mother is presently incarcerated for failing a drug screen. Nor did the court terminate Mother's rights due solely to her incarceration; her present incarceration for failing a drug screen indicates that there is a reasonable likelihood that she will not be able to remedy her substance abuse issues. And the trial court did not terminate her rights solely because there was a better home available for Child. Child was removed from Parents' home because of their abuse of drugs; more than two years later, after failing to take advantage of classes and therapy offered by DCS, Mother was in jail for failing a drug screen and Father was still testing positive for methamphetamine use. The evidence is sufficient to support the trial court's order terminating Parents' parental rights.

[19] The judgment of the trial court is affirmed.

Mathias, J., and Pyle, J., concur.