## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 04 2017, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re Termination of the Parent-Child Relationship of:

D.L. *(Minor Child)*

and

D.P. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 4, 2017

Court of Appeals Case No.
07A05-1707-JT-1582

Appeal from the Brown Circuit Court

The Honorable Judith A. Stewart, Judge

Trial Court Cause No.
07C01-1606-JT-73

**Robb, Judge.**

# Case Summary and Issue

[1] D.P. ("Father") appeals the juvenile court's termination of his parental rights, raising three issues for our review, which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous. Concluding the termination order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Father and T.L. ("Mother") are the parents of D.L. ("Child"), who was born in May of 2013. The Indiana Department of Child Services ("DCS") became involved with Father and Mother in April of 2015 after they admitted to using illegal narcotics. Father and Mother[1] both admitted to using methamphetamine. In June of 2015, Child was adjudicated a child in need of services ("CHINS") and was removed from Father and Mother's care. Child now resides with his maternal grandmother, D.K. Pursuant to the juvenile court's dispositional CHINS order, Father was ordered to participate in an intensive outpatient drug addiction treatment program, submit to random drug screens,[2] and remain in regular contact with his family case manager.

[3] In September of 2015, Father began an intensive outpatient program at Centerstone to treat his methamphetamine addiction issues. However, Father

---

[1] Mother has consented to Child's adoption.

[2] From December 2015 to April 2016, Father only submitted to one out of every four drug screen requests.

was discharged from the program in early November after being arrested and charged with operating a vehicle while intoxicated. Father was later permitted to return to the Centerstone program but his attendance became "spottier" and "irregular." Transcript, Volume II at 146-47. Father admitted during a group therapy session that he had been using methamphetamine "for [a] while at that point, off and on." *Id.* at 147. Father also admitted using methamphetamine to his family case manager, Lauren Tarbutton. Centerstone then withdrew Father from group therapy but permitted Father to participate in individual therapy sessions.

[4] In January of 2016, Father attempted suicide by carbon monoxide poisoning. Deputy Jacob Woods of the Brown County Sheriff's Department responded to a call of a suspicious vehicle and found Father's car parked in an on-coming lane of traffic with Father "asleep or unconscious." *Id.* at 121. After being awoken by Deputy Woods, Father "fad[ed] in and out of consciousness while sitting in the vehicle" and was transported to the hospital. *Id.* at 122. Father later admitted to using speed and methamphetamine before his suicide attempt.

[5] At this point, Father's methamphetamine addiction had "become more serious" and DCS recommended Father participate in an inpatient treatment program. Tr., Vol. III at 27. On January 26, 2016, Father was admitted to a twenty-one-day inpatient treatment program at Stepping Stones, an alcohol and drug treatment facility. Father successfully completed the program and was placed on a waiting list for Stepping Stones' six-month halfway house program. While Father waited for an opening in Stepping Stones' halfway house program, he

met with his former counselor at Centerstone and they created a plan for him to return to an intensive outpatient therapy program. In March of 2016, Father was sentenced to jail for operating a vehicle while intoxicated and an invasion of privacy conviction. In April of 2016, Father was released from jail but never returned to Centerstone or completed therapy.

[6] In May of 2016, Father began Stepping Stones' halfway house program but left the program in the middle of the night on June 5, 2016, without discussing his departure with anyone at the program. After Father left the program, Father moved to Johnson County with his girlfriend. Father did not communicate with DCS or his family case manager for several weeks following his departure from the program. On June 1, 2016, DCS filed a petition to terminate Father's parental rights.

[7] On September 19, 2016, Father was arrested and charged with domestic battery. At the time of the arrest, Father told the arresting officer both he and his girlfriend had "used," but it had been days since his last use. Tr., Vol. II at 225. Father also admitted to using Xanax at the time of the incident. Following his arrest, Father contacted his family case manager, Corina Harmless, and she questioned him about his recent arrest. Father admitted to Harmless that he had recently used drugs.

[8] On November 10 and November 13, 2016, the juvenile court held evidentiary hearings on DCS' petition to terminate Father's parental rights. During the hearings, Father was incarcerated at the Johnson County Jail for violating a

protective order. On March 17, 2017, the juvenile court issued its order terminating Father's parental rights. The juvenile court concluded DCS proved by clear and convincing evidence there was a reasonable probability the conditions that resulted in Child's removal and placement outside Father's home would not be remedied and termination of parental rights was in Child's best interest. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[9]     When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the juvenile court's unique opportunity to judge the credibility of the witnesses. *Id.* (citing Ind. Trial Rule 52(A)). Further, the juvenile court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the juvenile court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment. *Id.*

# II. Termination Order

[10] The termination of parental rights is an extreme measure designed to be utilized only when all other reasonable efforts have failed. *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014). Indiana Code section 31-35-2-4(b)(2) details what DCS must prove in order to terminate parental rights, which we note in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2.

[11] Father contends the juvenile court's termination order is clearly erroneous. Specifically, he claims DCS failed to present clear and convincing evidence sufficient to establish there is a reasonable probability the conditions resulting in Child's removal will not be remedied and that termination of the parent-child relationship is in Child's best interests.

# A. Remedy of Conditions

[12]  In determining whether conditions leading to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his child at the time of the termination hearing and must take evidence of changed conditions into consideration in its decision. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). The juvenile court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* at 670 (citation omitted). However, the juvenile court cannot focus solely on historical conduct to the exclusion of evidence as to the parent's current circumstances or evidence of changed conditions. *In re C.M.*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011).

[13]  In maintaining that DCS did not meet its burden of clear and convincing evidence, Father points to his efforts in attending rehab and the progress he has made in battling his addiction issues. Father contends it is "unreasonable and without evidentiary support to determine that there is a reasonable possibility that the condition will not be remedied." Brief of Appellant at 14. Contrary to this view, there is sufficient evidence to establish a reasonable probability the condition will not be remedied. In April of 2015, Child was removed from Father and Mother's care due to their drug use. Following Child's removal from the home, Father was ordered to participate in random drug screens, complete an intensive outpatient therapy program, and to stay in contact with his family case manager. Father has yet to complete an intensive outpatient therapy program as ordered by the juvenile court and has continued, by his own

admissions and as recently as September of 2016, to use illegal narcotics. Moreover, Father has refused numerous drug screens and has submitted to only one out of every four requests from DCS. Father has engaged in this course of conduct for over a year and although we acknowledge his efforts in attending rehab to free himself of his addiction, he has been unsuccessful and his habitual patterns of conduct demonstrate a failure to remedy the condition leading to Child's removal. DCS presented sufficient evidence to meet its burden of proof the condition will not be remedied.

## B. Best Interests

[14] Father also contends DCS failed to prove termination of his parental rights was in Child's best interest. In determining what is in the best interests of a child, the juvenile court "is required to look beyond the factors identified by DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).

> The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (citations omitted), *trans. denied*.

As noted, DCS presented sufficient evidence to establish the condition would not be remedied. Further, Chad and Anne Brown, Child's guardians ad litem, and Tarbutton, the DCS family case manager, all agreed termination of Father's parental rights was in Child's best interest. *See id.* at 1006. The record also reveals maternal grandmother is meeting all of Child's needs and Child is doing "exceedingly well" in that environment. Tr., Vol. III at 58-59. We conclude DCS presented sufficient evidence from which the juvenile court could conclude termination of Father's parental rights was in Child's best interest.

# Conclusion

DCS presented sufficient evidence to support the termination of Father's parental rights. The judgment of the juvenile court terminating Father's parental rights is affirmed.

Affirmed.

Riley, J., and Pyle, J., concur.