

FILED

Mar 13 2017, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT,
FATHER

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEY FOR APPELLANT, MOTHER

Cara Schaefer Wieneke
Special Asst. to the State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination
of the Parent-Child Relationship
of G.M. (Child) and M.M.
(Mother) & K.C. (Father);

M.M. (Mother), and
K.C. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner*

March 13, 2017

Court of Appeals Case No.
35A02-1609-JT-2096

Appeal from the Huntington
Circuit Court

The Honorable Thomas Hakes,
Judge

Juvenile Court Cause No.
35C01-1603-JT-13

**May, Judge.**

[1] M.M. ("Mother") and K.C. ("Father") (collectively, "Parents") appeal the involuntary termination of their parental rights to G.M. ("Child"). Mother challenges a number of the juvenile court's findings and argues the Department of Child Services ("DCS") did not present sufficient evidence the conditions under which Child was removed would not be remedied and termination was in the best interests of Child. Father makes similar arguments, but we find dispositive his argument the juvenile court could not terminate his rights when it had never issued a dispositional decree as to Father. We affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] Child was born to Mother on December 10, 2014. Child was born with a heart condition requiring specialized care. On December 12, 2014, DCS removed Child under the juvenile court's emergency order because Mother admitted using unprescribed painkillers and heroin during pregnancy. Father[1] refused a drug screen and reported to DCS he was unable to care for Child because "he is on probation for rape and is not permitted to be around children unsupervised." (DCS Ex. 3.) On December 16, 2014, DCS filed a petition alleging Child was a

---

[1] Father's paternity was established on January 20, 2015.

Child in Need of Services (CHINS) based on Mother's drug use, Child's drug withdrawal at birth, and Father's inability to care for Child.

[3] Father was incarcerated all but a three-month period during these proceedings. He was arrested shortly after Child's birth for an alleged probation violation based on his testing positive for morphine and Percocet. In March 2015, the State filed another petition to revoke his probation, alleging Father tested positive for morphine. Father's probation was revoked in May 2015, and he was ordered to serve the remainder of his suspended sentence for rape and burglary.

[4] The juvenile court held an initial hearing on the CHINS petition on August 4, 2015, and Father admitted Child was a CHINS. After Father's admission, the juvenile court held a fact finding hearing as to the allegations involving Mother and ultimately adjudicated Child a CHINS. The juvenile court held a disposition hearing on September 4, 2015, and ordered:

> 2. Mother shall participate in a substance abuse evaluation, as well as ongoing substance abuse treatment.
>
> 3. Mother shall attend visitation with the child as long as she maintains clean drug screens.
>
> 4. Mother shall submit to random drug screens.
>
> 5. Mother shall participate in home based services.

6. Mother and [sic] shall comply with all recommendations of DCS as outlined in paragraph IV of DCS' Predispositional Report filed September 1, 2015.

7. Father may participate in services as he is able while incarcerated. Father's dispositional hearing will not occur until his release from incarceration.

(DCS Ex. 11.)

Mother did not participate in services or visit with Child consistently. She tested positive for illegal substances four times during the pendency of these proceedings. She did not attend Child's medical appointments, despite being advised of when they were. Mother was incarcerated at the time of the final termination hearing. Father participated in some parenting-related services while incarcerated.

On December 17, 2015, the juvenile court, on DCS request, changed Child's permanency plan from reunification to adoption based on Mother's noncompliance with services and positive drug screens. On March 7, 2016, DCS filed a petition to terminate Parents' rights to Child. On July 14, 2016, the juvenile court held a hearing on the matter and entered an order terminating Parents' rights to Child on August 12, 2016.

# Discussion and Decision

[7]     We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id*., but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

[9]     To terminate a parent-child relationship in Indiana, DCS must allege and prove:

> (A)    that one (1) of the following is true:
>     (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. "[I]f the State fails to prove any one of these statutory elements, then it is not entitled to a judgment terminating parental rights." *Id.* at 1261. Because parents have a constitutionally protected right to establish a home and raise their children, the State "must strictly comply with the statute terminating parental rights." *Platz v. Elkhart Cnty. Dep't of Public Welfare*, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994).

## I. Father's Argument

In its September 4, 2015, Dispositional Decree, the juvenile court ordered Mother to complete certain services, and stated regarding Father: "Father may participate in services as he is able while incarcerated. Father's dispositional hearing will not occur until his release from incarceration." (DCS Ex. 11.) As part of its order on December 3, 2015, approving the change in Child's permanency plan from reunification to adoption, the juvenile court noted, "Father is incarcerated and is not under disposition." (DCS Ex. 12.) Based thereon, Father argues DCS has not proven Child had been removed from his care under a dispositional decree for at least six months as required by Indiana Code Section 31-35-2-4(b)(2)(A)(i).

As an initial matter, we note waiver of this issue would normally apply, as generally a party is not permitted to raise an issue for the first time on appeal. *See Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal."), *reh'g denied*. However, we have held, concerning the requirement a child be removed under a dispositional decree for at least six months before a court can terminate a parent's rights, the "constitutionally protected right of parents to establish a home and raise their children mandates that the failure of a juvenile court to require compliance with any condition precedent to the termination of this right constitutes fundamental error which this court must address *sua sponte*." *Parent-Child Relationship of L.B. and S.B. v. Morgan Cty. Dept. of Public Welfare*, 616 N.E.2d 406, 407 (Ind. Ct. App. 1993), *trans. denied*.

[12] The juvenile court stated in its December 3, 2015, order, "Father is incarcerated and is not under disposition." (DCS Ex. 12.) "An involuntary termination petition must allege, and the State must prove by clear and convincing evidence, that the child was removed from the parents for at least six months under a dispositional decree at the time the involuntary termination petition was filed." *In re D.D.*, 962 N.E.2d at 74. As stated in the court's order, Father was not "under disposition" on December 3, 2015, and thus when DCS filed the petition to terminate his parental rights three months later in March 2016, Child had not been removed as to Father for at least six months.[2] The juvenile court erred when it terminated Father's parental rights to Child, and we must reverse the judgment as to Father.

## II. Mother's Arguments[3]

[13] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of*

---

[2] This issue is dispositive as to Father because DCS was required to prove Child had been removed from his care for at least six months or Child had been removed from his care for fifteen of the last twenty-two months as required by Indiana Code Section 31-35-2-4(b)(2)(A)(iii), and the juvenile court concluded DCS did both. However, in its brief, DCS conceded it did not meet the fifteen month criteria, as it filed its petition to terminate Parents' rights when Child had been removed for one year, two months, and twenty-four days. As the statute is written in the disjunctive, DCS is required to prove only one of the three parts of Indiana Code Section 31-35-2-4(b)(2)(A). *See In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008) (Indiana Code Section 31-35-2-4(b)(2)(A) written in the disjunctive and thus DCS need only prove one of the enumerated elements therein), *trans. denied*.

[3] In its brief, DCS noted the juvenile court signed the dispositional order in this case on September 4, 2015, but the order was not entered in the Chronological Case Summary until October 7, 2015. DCS argued, "[u]sing the date the court signed the order, DCS met the '6 months under a dispositional [order]' requirement. However, using the date the order was entered into the CCS, *i.e.*, Oct. 7, 2015, this is only about five months before DCS filed its termination [petition] on March 7, 2016." (Br. of Appellee at 8, n.5)

*Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208. Mother challenges nine of the juvenile court's findings, arguing the findings are not supported by the evidence.

## A. Findings Regarding Visitation and Services

[14]    Mother challenges two of the juvenile court's findings regarding visitation with Child and Mother's participation in services:

> 13.   After removal of the child on or about December 12, 2014, the child was never returned to parents' care and custody as a result of Mother's absence from the child's life and services, non-compliance with services, Mother's positive drug screens,

---

It is well-established the State's noncompliance with the six-month statutory requirement as set forth in Indiana Code Section 31-35-2-4(b)(2)(A)(i) is fatal to an involuntary termination of parental rights. *See, e.g., In re D.D.*, 962 N.E.2d 70, 76 (Ind. Ct. App. 2011) (termination of mother's parental rights reversed because DCS filed petition to termination mother's rights less than six months after juvenile court entered its dispositional decree). Here, the CCS of Child's CHINS case indicates on October 7, 2015, "COURT ENTERS DISPOSITIONAL ORDER (*Hearing held September 4, 2015*) (RJO). COPY OF ORDER TO DCS, ATTORNEY JUSTIN WALL & ATTORNEY CASEY MORGAN." (DCS Ex. 2) (emphasis in original). The entry indicated "Order Signed: 09/04/2015[.]" (*Id.*) An entry from September 4, 2015, states, "*Disposition hearing held. Court approves DCS recommendations and enters Order on same.*" (*Id.*) (emphasis in original). The order was signed on September 4, 2015. Based thereon, we conclude DCS met the six-month statutory requirement set forth in Indiana Code Section 31-35-2-4(b)(2)(A)(i) because the time frame between September 4, 2015, and March 7, 2016, is at least six months.

Mother's failure to visit the child through a majority of the child's life, [and] Mother's current incarceration[.]

* * * * *

34. Prior to Mother's recent incarceration, she did not engage in her court-ordered services regularly.

(Mother's App. at 98, 100.)

[15] Mother argues, regarding the juvenile court's findings 13 and 34, that she regularly visited with Child until Father was incarcerated in March 2015, because without him she did not have transportation to the visitations. The evidence indicates she visited with Child for eight one-hour sessions from January 2015 until March 2015. She cancelled seven visitations, and fifteen visitations were cancelled "due to [Child's] condition or medical appointments." (*Id.* at 101.) Mother claims DCS did not attempt to find a new service provider for visitation until August 2015 and Mother was never approved to begin supervised visits after taking the required intake assessment. DCS Services Manager Daniel Borne testified Mother was not allowed supervised visitation with Child after her intake assessment because "she needed to complete the drug screen to be able to start the visits and have regular interaction with [the Family Case Manager]." (Tr. at 94.) Mother's final visit with Child was in October 2015 when she "visited, uh, late one, uh, evening, and she spent approximately an hour with [Child]" while Child was in the hospital for heart surgery. (*Id.* at 132.)

[16] Regarding services, Mother "does not dispute that she did not complete all the required services under the dispositional order." (Br. of Mother at 15.) However, she complains she "was given only a few short months to comply with services" and her long work hours and lack of transportation "made complying with services more difficult than usual." (*Id.*) Borne testified he received referrals for services including "psychological tests, uh, substance abuse treatment, substance abuse evaluation, and uh, drug screens" for Mother on February 21, 2015. (Tr. at 87.) Borne testified he "got another referral for home base[d] family center case work" in August 2015. (*Id.* at 88.) Borne stated Mother completed her initial intake clinical interview on August 20, 2015, but never completed an initial substance abuse assessment and did not meet with a substance abuse counselor. This evidence is sufficient to support the juvenile court's relevant findings.

[17] Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). Further, her contentions involve the adequacy of services provided as part of her CHINS case, which is unavailable for our review during an appeal following termination of parental rights. *See In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law").

## B. Findings Regarding Mother's Drug Screens

Mother takes issue with two of the juvenile court's findings regarding her positive drug screens. The juvenile court found:

> 36. After March 2015, Mother's only drug screen was administered in December 2015 by DCS.
>
> * * * * *
>
> 52. Before Mother stopped reporting for drug screens, Mother tested positive for drugs on the following dates:
>
>> a. December 11, 2014: positive for oxycodone without a prescription[;]
>>
>> b. February 16, 2015: positive [for] methadone without a prescription;
>>
>> c. February 26, 2015: positive for opiates (hydrocodone) without a prescription[.]

(Mother's App. at 100-01.) Mother also claims the part of Finding 13 indicating she had "positive drug screens," (*id*. at 98), is incorrect because she had only one positive drug screen from the time she was ordered to complete services in September 2015 until the termination petition was filed in March 2016.

Mother argues the juvenile court should not have considered her three other positive drug screens because they were prior to the CHINS adjudication. She also argues, regarding the first positive drug screen for oxycodone without a

prescription, which was taken at the hospital following Child's birth, "[i]t seems probable that Mother was given an epidural during labor and a pain reliever after delivery in the hospital, which would have shown up on the drug screen." (Br. of Mother at 15-16.) However, Mother did not present any evidence to support that speculation. Moreover, in its order following the initial hearing on DCS's petition to declare Child a CHINS on December 16, 2014, the court stated, "Court Orders Mother to have no drugs in her system when visiting the child. Court advises mother of contempt and that she can be held in contempt and incarcerated if she disregards the Order of the Court to have no drugs in her system while she is visiting child." (DCS Ex. 6.) Thus, Mother knew she was not to take drugs prior to the dispositional order stating she should not do so.

[20] The record contains evidence that supports the findings; DCS presented multiple exhibits containing the results of Mother's drug screens and Borne testified DCS referred Mother for a "substance abuse evaluation, and uh, drug screens" on February 21, 2015. (Tr. at 87.) Her arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

### C. Finding Regarding Mother's Behavior during Visitation

[21] The juvenile court found regarding Mother's interaction with Child during supervised visitation: "During visits, service provider Ira Bencun observed Mother would hold the child but would not initiate conversation to learn more

about the child's condition and required care." (Mother's App. at 101.) Mother argues this finding is "basically correct, [but] it does not reflect the entirety of the evidence presented on the issue." (Br. of Mother at 17.) Mother directs us to Bencun's testimony Child "would be asleep most of the visit just because of his age" and Mother "was appropriate in holding him and handling him in that one hour that she would [inaudible] him each visit." (Tr. at 105.) Bencun also testified that while Mother did not initiate conversations regarding Child's condition and required care, she received that information from Child's foster mother.

[22] Bencun's testimony supports the juvenile court's findings. Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

**D. Findings Regarding Mother's Interaction with the GAL**

[23] Regarding Mother's interaction with the GAL, the juvenile court found:

> 107. The GAL testified that she was never able to meet either the parents in person prior to July 14, 2015 [sic] at the trial on DCS [sic] petition to involuntarily terminate parental rights.
>
> * * * * *
>
> 113. The GAL testified that Mother has always had other priorities, such as her job, that, while important, seemed to take priority over her own child.

(Mother's App. at 105.) Mother's argument regarding this issue is a litany of excuses regarding why she was unable to meet with the GAL such as "Mother was unable to respond to GAL's letter . . . because she had no funds for envelopes and postage" and had the GAL "met Mother in person . . . she would have learned that Mother's place of employment was short-staffed at the time; that Mother was required to work extra hours to keep her job; and that her employer has now hired additional staff, which will allow Mother to work fewer hours each week." (Br. of Mother at 18.) Her excuses are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The record contains evidence that supports the findings.

### E. Finding Regarding Child's Relationship with Foster Parents

[24] The juvenile court found, "[Child] has progressed well in his foster family, and he views his foster parents as his true parents." (Mother's App. at 106.) Mother contends she does not dispute that the foster family has cared for Child while the CHINS and termination cases proceeded, but "the juvenile court's finding that [Child], a non-speaking toddler, views his foster parents as his 'true parents' is speculation at best and certainly not supported by the evidence." (Br. of Mother at 19.) We agree the juvenile court's determination Child feels foster parents are his "true parents" is unsupported by the evidence, as such a sentiment is hardly capable of determination under these facts. However, as the juvenile court made appropriate findings regarding Mother's drug use, lack of

frequency in visitation with Child, and noncompliance with services, the finding by itself does not warrant reversal. *See Roser v. Silvers*, 698 N.E.2d 860, 863 (Ind. Ct. App. 1998) ("Where juvenile court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute the basis for reversal even if erroneous.").

## F. Reasonable Probability Conditions Resulting in Child's Removal Would Not Be Remedied

[25] The juvenile court must judge a parent's fitness to care for her children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[26] In terminating Mother's parental rights, the juvenile court concluded there was a reasonable probability the conditions that resulted in Child's removal from Mother's care would not be remedied. Mother argues this conclusion is not supported by the findings because she had steady employment, reliable transportation, and a place for her and Child to live. She also reported at the termination hearing she was aware of Child's special needs and felt her training as a certified nursing assistant would help her learn the specific requirements of his medical care quickly. She also testified she would be released from incarceration in November 2016. She argues she no longer has a problem with

drugs and at the termination hearing stated she "was more than willing to complete any services requested and believed that due to a change in her work schedule and the fact that she had obtained reliable transportation, she would have the ability to meet with service providers and complete those services." (Br. of Mother at 20-1.)

The evidence suggests otherwise. Mother did not complete services, and the time for completion of those services had long passed. As noted in our discussion of Mother's challenged findings, she did not complete services offered by DCS, even after ordered by the court to do so; she did not regularly visit with Child and did not seek to understand his condition and how to treat it; and she had multiple positive drug screens, the last of which resulted in her arrest and subsequent incarceration for violation of probation. Mother's arguments are requests for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The juvenile court did not err when it concluded there was no reasonable probability Mother would remedy the conditions that led to Child's removal from her care.

## G. Best Interests of the Child

In determining what is in the child's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment along with the

parent's current inability to do so supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[29] Mother argues she was not given ample time to complete services to assist her in reunification with Child and thus termination is not in the best interests of Child. However, the adequacy of the services provided to her as part of Child's CHINS case is unavailable for our review during an appeal following termination of parental rights. *See In re H.L.*, 915 N.E.2d at 148 n.3 ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law").

[30] Further, DCS presented sufficient evidence termination was in Child's best interests. Family Case Manager John Lane testified termination was in Child's best interests because

> [Child is] established in a home in which he's in and has been provided, umm, appropriate care during that time, in fact all of his life since being discharged from the hospital, and he has no bond with his parents and they've not provided, uh, any care for him even or bonded with him at this point.

(Tr. at 140.) Additionally, Kathryn Garrett, Child's Guardian ad Litem testified termination was in Child's best interests because:

> Uh, well, with regard to mother, umm, it seemed to me that significant, uh, strides had not been made, uh, to repair the conditions that initiated the removal particularly with regard to her participation [in] service[s] or addressing her substance abuse

issues. Uh, and, also her non-attendance, I guess, at medical appointments that she was able to go to, umm, the drug screening and also any supervised visitation. Umm, it was my understanding that there was [sic] several months that she was not incarcerated that she did not participate. . . . Umm, and I don't believe either parent has, I guess, learned about the medical condition or what would involve going forward if the child were to be reunited with them.

(*Id*. at 160.) The juvenile court did not err when it concluded termination was in Child's best interests and terminated Mother's parental rights because there existed sufficient evidence to support that conclusion. We accordingly affirm the termination of Mother's parental rights.

# Conclusion

[31] The juvenile court erred when it terminated Father's parental rights to Child because Child had not been removed from Father under a dispositional decree for at least six months as required by Indiana Code Section 31-35-2-4(b)(2)(A)(i). However, DCS presented sufficient evidence to support the juvenile court's findings regarding Mother, including the juvenile court's conclusions the circumstances under which Child was removed would not be remedied and termination was in Child's best interests. Therefore, we reverse the termination of Father's parental rights to Child, affirm the termination of Mother's parental rights to Child, and remand to the juvenile court for proceedings consistent with this opinion.

[32] Affirmed in part, reversed in part, and remanded.

Najam, J., and Bailey, J., concur.