## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 05 2018, 9:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Catherine S. Christoff
Christoff & Christoff Attorneys
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.B. (Child) and C.B. (Mother);

C.B. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 5, 2018

Court of Appeals Case No. 18A-JT-1111

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause No. 02D08-1706-JT-132

**May, Judge.**

[1] C.B. ("Mother") appeals the involuntary termination of her parental rights to her child, M.B. ("Child"). Mother argues the trial court's findings do not support its conclusions that the conditions under which Child was removed from Mother's care would be remedied; that the continuation of the parent-child relationship posed a threat to Child; and that termination was in Child's best interests. We affirm.

# Facts and Procedural History

[2] Child was born on October 21, 2013, to Mother and J.S. ("Father").[1] On August 5, 2015, the Department of Child Services ("DCS") received a report that Mother and two of her other children[2] were living at a motel[3] with "only left over McDonald's for food[,]" (Appellant's App. Vol. II at 14); Mother dropped off another two of her children at the park "without supervision while [Mother] went to give plasma[,]" (*id*.); and Mother "was calling local homeless shelters because she, [and two other children,] were needing shelter." (*Id*.) DCS investigated and found Mother tested positive for cocaine, Mother was engaged in an ongoing relationship marred by domestic violence with Father,[4] and

---

[1] Father's parental rights to Child were not terminated, and he does not participate in this appeal.

[2] Child has six siblings who were also removed from Mother's home. They are not subject to this appeal.

[3] Child lived with paternal grandmother, and DCS formally placed Child with her following his removal from Mother's care.

[4] Father is the father of Child only. Child's siblings have different fathers who are not subject to this appeal.

Mother was on probation after pleading guilty to Class C felony fraud on a financial institution.

[3] The trial court issued a preliminary inquiry order on August 7, 2015, authorizing DCS to file a petition alleging Child was a Child in Need of Services ("CHINS"). The trial court held an initial hearing on the CHINS petition the same day.

[4] On August 25, 2015, DCS filed an amended petition alleging Child was a CHINS. The trial court held another initial hearing on November 9, 2015, and adjudicated Child a CHINS based on Mother's partial admission of the allegations. The trial court held a dispositional hearing the same day, and ordered Mother to, among other things, refrain from criminal activity; maintain consistent employment and appropriate housing; submit to a diagnostic assessment and follow all recommendations; obtain a drug and alcohol assessment and follow all recommendations; enroll in and successfully complete home-based services; obey the terms of her probation; refrain from the use of illegal substances and submit to random drug screens; and visit with Child. Child remained in paternal grandmother's care until grandmother moved to Illinois, at which time Child was placed in foster care.

[5] Soon after Child was removed from Mother's care, Mother's probation was revoked and she was ordered to serve the remainder of her two-year sentence in a work release program. Mother began work at the work release program on November 4, 2015. Mother initially complied with services. However, by

January 2017, she had become noncompliant with some services and the permanency plan for Child changed from reunification to adoption. Soon thereafter, she began substance abuse treatment, which continued through June 2017. Mother also attended therapy from April 2016 until August 30, 2017. Mother participated in supervised visitation with Child, which the Family Case Manager testified Mother attended "[e]ighty-five percent (85%) of the time." (Tr. Vol. II at 151.) Mother remained drug-free throughout the proceedings.

[6] On June 28, 2017, DCS filed a petition to terminate Mother's parental rights to Child. Mother continued services and visited Child until she was released from work release on September 5, 2017. At that time, she ceased participation in services and told the Family Case Manager that she had moved to Detroit, Michigan, and that she "had no intention of returning to Fort Wayne." (*Id.* at 150.) The trial court held fact-finding hearings on the termination petition on January 16, 23, 24, and 25, 2018. Mother did not attend any of the fact-finding hearings. The trial court entered an order terminating Mother's parental rights to Child on April 24, 2018.

# Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique

position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[9] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[10] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.[5]

[11] Mother challenges the trial court's conclusions that the conditions under which Child was removed were not likely to be remedied and that continuation of the parent-child relationship posed a threat to Child's well-being. As Indiana Code

---

[5] Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need only decide if the trial court's conclusion supports one of these requirements. *See In re L.S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Mother also argues termination is not in Child's best interests.

### *Reasonable Probability Conditions Would Not Be Remedied*

[12] The trial court must judge a parent's fitness to care for the child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[13] When assessing a parent's fitness to care for a child, the trial court should view the parents as of the time of the termination hearing and take into account the changes that have occurred during the proceedings. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. However, the trial court must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.

[14] Regarding the reasonable probability that conditions would not be remedied, the trial court found and concluded, regarding Mother:

> [Findings of Fact]

\* \* \* \* \*

11. [Mother] was compliant with services while she remained in her work release program required as a result of a criminal conviction. However, after completing work release in September 2017, she discontinued her services.

12. From the testimony of [Mother's] therapist, Virginia Adams of the Bowen Center, the Court finds that [Mother] had been making progress in her individual counseling. However, there remained issues to be addressed before reunification could be recommended. [Mother] discontinued her therapy in August 2017 before those goals could be achieved.

13. From the testimony of Dr. Mary Johnson of the Bowen Center, the Court finds that [Mother] stopped participating in services designed to address her addictions in June, 2017.

14. [Mother] has not visited [Child] since August, 2017.

\* \* \* \* \*

[Conclusions of Law]

\* \* \* \* \*

3. [Mother] did not supervise and provide for [Child] at the onset of the underlying CHINS case. She left [Child] on at least one instance without supervision. Notwithstanding the provision of services, she has left the community and has not seen or provided for [Child] since August, 2017. She has not demonstrated an ability to benefit from services nor has the reason for the removal of [Child] from her care been corrected. The court therefore finds

and concludes that the Department has met its statutory burden with regard to [Mother].

(Appellant's App. at 121, 123.)  Mother argues the trial court did not properly credit the testimony of Mother's work release supervisor and Mother's parental rights should not have been terminated because Father's rights were not terminated despite Mother's allegations that he did not complete certain services.[6]

[15]    While Mother was initially compliant with services and continued compliance while completing work release, she abruptly stopped participating in services and visiting Child when her work release ended.  She did not contact DCS on a regular basis thereafter, and when she did speak to DCS, she indicated she had moved out of state and had no intention of returning.  Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).  The trial court's findings support its conclusion that the conditions under which Child was removed from Mother's care would not be remedied.  *See In re J.C.*, 994 N.E.2d 278, 289 (Ind. Ct. App. 2013) (termination of parental rights supported by

---

[6] Despite Mother's argument to the contrary, the termination of her parental rights is separate from the trial court's decision regarding Father's parental rights.  *See In re J.W.*, 779 N.E.2d 954, 959 (Ind. Ct. App. 2002) (upholding the termination of mother's rights when father's rights had not been similarly terminated*), trans. denied.*

Mother's continued noncompliance with services and inability to benefit from services provided), *reh'g denied*.

### *Child's Best Interests*

[16] In determining what is in Child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[17] The trial court's findings regarding Mother's compliance with services and visitation are also applicable to the trial court's conclusion regarding the best interests of Child. *See supra*. Here, regarding Child's best interests, the trial court concluded, "given the abandonment of [Mother], the termination of her parental rights serves [Child's] best interests." (Appellant's App. at 123.) Mother takes issue with the trial court's characterization of her behavior as abandonment; however, we see no other way to classify Mother's relocation out of state, cessation of services and visitation with Child, and expression that she did not intend to return to Fort Wayne, where Child was in foster care.

Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The trial court's findings support its conclusion that termination of Mother's parental rights was in Child's best interests. *See Matter of G.M.*, 71 N.E.3d 898, 909 (Ind. Ct. App. 2017) (termination in Child's best interests because Mother had not progressed in services and continued to be unable to care for Child).

# Conclusion

[18] The trial court's findings support its conclusion that the conditions under which Child was removed from Mother's care would not be remedied and termination was in Child's best interests. Accordingly, we affirm the termination of Mother's parental rights to Child.

[19] Affirmed.

Baker, J., and Robb, J., concur.