## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 29 2019, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of M.M., Father, Mi.M., Mother,[1] and Ma.M., Child, M.M., *Appellant-Respondent,* v. Indiana Department of Child Services, | January 29, 2019 Court of Appeals Case No. 18A-JT-2072 Appeal from the Fayette Circuit Court The Honorable Hubert Branstetter, Jr., Judge Trial Court Cause No. 21C01-1802-JT-92 |

---

[1] The juvenile court also terminated Mother's parental rights to Ma.M. While Mother does not participate in this appeal, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.



*Appellee-Petitioner.*

**Kirsch, Judge.**

M.M. ("Father") appeals the juvenile court's order terminating his parental rights to his minor child Ma.M. ("Child"). Father raises the following consolidated and restated issue for our review: whether the juvenile court's termination order was clearly erroneous when it found that there was a reasonable probability that the conditions that resulted in Child's removal will not be remedied and that termination of Father's parental rights was in the best interests of Child.

We affirm.

## Facts and Procedural History[2]

Mi.M. ("Mother") and Father are the parents of Child, who was born on July 26, 2016. Child was born five weeks premature and addicted to drugs. At the

---

[2] Because Mother does not appeal, we set forth those facts necessary to Father's appeal.

time of his birth, Child tested positive for methamphetamine, opiates, and unprescribed methadone, and his meconium tested positive for amphetamine and methadone. Child was transferred directly to St. Vincent Hospital, where medical personnel determined he had jaundice, was withdrawn, and was having difficulty eating. Noting Child's physical condition, the Indiana Department of Child Services ("DCS") removed Child from Mother's and Father's (together, "Parents") care.

[4] On August 12, 2016, DCS filed a child in need of services ("CHINS") petition, alleging that: (1) Father did not have permanent and stable housing; (2) Mother and Child tested positive for unprescribed drugs on the day of Child's birth; (3) Child had to be given routine dosages of morphine because he was born with "Neonatal Abstinence Syndrome," *Ex. Vol. I* at 12; and (4) Parents had prior involvement with DCS regarding CHINS services offered in connection with two other children, E.M. and T.S. *Id*. at 11-12. That same day, following an emergency detention hearing, the CHINS court approved Child's removal from Parents' care. *Id*. at 15. The next day, Child was released from the hospital into the care of his paternal grandmother; Child was never returned to Parents' care.

[5] Father's prior involvement with DCS began in August 2015 and pertained to a CHINS proceeding for his child E.M., who was born July 20, 2015. There, like here, DCS's involvement was prompted by Mother's and Father's drug abuse and unstable housing. *Id.* at 36. Father did not comply with DCS services in that case, and he continued to use illegal drugs and engage in criminal activity.

Specifically, Father tested positive for methamphetamine on December 2, 2015, February 3, 2016, and February 17, 2016, and he committed burglary on February 16, 2016. *Id.* at 42, 63. On December 15, 2017, the juvenile court terminated Father's parental rights to his child E.M. *Id.* at 35-45.

[6] Meanwhile, in January 2017, the CHINS court held a factfinding hearing and adjudicated Child to be a CHINS. The CHINS court found in pertinent part that: (1) Mother and Father failed to participate in services and substance abuse treatments in their prior CHINS proceedings;[3] (2) during DCS involvement in the prior proceedings, Father's drug screens were positive for methamphetamine on three separate occasions; (3) at the time of Child's CHINS factfinding hearing, Father had not completed substance abuse treatment; (4) at the time of the factfinding hearing, Father had an outstanding arrest warrant on the burglary charges; (5) Child was born exposed to methamphetamine; and (6) Father failed to ensure that Child received proper care and supervision. *Id.* at 18-19.

[7] Following a February 2017 dispositional hearing, the CHINS court ordered Father to, among other things: (1) contact the family case manager ("FCM") weekly; (2) maintain stable housing and income; (3) refrain from consuming illegal or unprescribed drugs; (4) complete parenting and substance abuse assessments and follow all recommendations; and (5) submit to random drug

---

[3] In December 2017, the juvenile court also terminated Mother's parental rights to her sons E.M. and T.S.

screens. *Id.* at 20-21. Father did not participate in any of those services. In October 2017, the CHINS court granted DCS's request to modify the dispositional decree to relieve DCS of its obligation to provide services to Father and to change the permanency plan from reunification to termination of parental rights. *Id*. at 27, 29.

[8] "Father pleaded guilty to the previously charged [b]urglary and appears to have been sentenced November 17, 2017, to a suspended term of [one year and six months] imprisonment." *Appellant's Br*. at 7 (citing *Ex. Vol. I* at 63-64). On December 1, 2017, Father was charged with unlawful possession of a syringe, a Level 6 felony, and visiting a common nuisance, a Class B misdemeanor. *Id*. (citing *Ex. Vol. I* at 56). Based on those offenses, Father was alleged to have violated the terms of his probation in the burglary case and was placed in jail.

[9] In February 2018, DCS filed a petition to terminate Father's parental rights to Child. Subsequently, Father pleaded guilty to unlawful possession of a syringe and admitted to violating his probation on the burglary count. On April 10, 2018, the trial court sentenced Father to one year executed for possession of a syringe and a consecutive sentence of one year and six months for the probation violation in the burglary case.

[10] During the July 2018 termination factfinding hearing, Father testified that, after his release from incarceration, he planned to move close to his sons, Child and E.M. *Tr. Vol*. I at 41. Father said that he had arranged post-release employment as a construction worker, and that he intended to attend meetings

at Narcotics Anonymous or Alcoholics Anonymous with the goal of remaining sober. *Id*. at 42. Father testified that he had been accepted into a year-long commitment in a faith-based recovery home for his continuing post-release rehabilitation. *Id*. at 43.

[11] Father also testified that he had had, on and off, about "twenty-plus years of substance abuse." *Id.* at 39, 40. Father admitted that he started drinking alcohol at an early age and then moved to marijuana. *Id*. at 40. Since then, he had used heroin, methamphetamine, and prescription pills. *Id*. Father completed a twenty-one-day program at Tara Treatment Center in May 2016, which was before Child's birth. *Id*. at 39. Father testified that he also participated in an intensive treatment program while incarcerated at the Fayette County Jail; however, he was sent to the Indiana Department of Correction before the program was completed. *Id*. at 40-41.

[12] Prior to his incarceration, Father was offered a substance abuse assessment, substance abuse treatment, case management, supervised visitation, and drug screens. *Id*. at 55. During the underlying proceedings, Father did not complete any services, and he failed to maintain contact with FCM Lori Brittenham ("FCM Brittenham"). *Id*. at 49-50. In fact, on October 4, 2017, the juvenile court ordered that services be terminated because of Father's failure to participate and to comply with DCS. *Id*. at 29-30. Additionally, Father failed to maintain suitable housing for Child. *Ex. Vol. I* at 6.

[13]     Child was released from St. Vincent's Hospital on August 13, 2016 and was placed with his paternal grandmother and her husband. *Tr. Vol. I* at 54. FCM Brittenham testified that Father had not seen Child since he was released from the hospital and had never asked DCS for visitation with Child. *Id.* at 55. At the time of the termination hearing, Father had been incarcerated for sixteen of the twenty-four months of Child's life, and his expected release date was July 16, 2019. In other words, by the time Father is released from prison, he will have been in prison for about thirty-two of Child's thirty-six months of life. Paternal grandmother and her husband are the only parents Child has known.

[14]     Father testified that drug abuse is a terrible sickness that takes away one's ability to think rationally and to be a good parent. *Id.* at 44. FCM Brittenham testified that it was important to DCS that Father participate in substance abuse treatment because he is unable to provide a safe environment for Child while using illegal substances. *Id.* at 50. FCM Brittenham testified that, except for drug treatment that was completed prior to Child's birth, Father has not completed "any long-term substance abuse treatment." *Id.* at 54.

[15]     FCM Brittenham testified that DCS recommended the termination of Father's parental rights because of his history of drug use and incarceration, which prevented him from meeting Child's need for permanency and stability. *Id.* at 54. DCS's plan for Child upon the termination of Father's parental rights was adoption by paternal grandmother and her husband, who had already adopted one of Child's brothers. *Id.* From this and other evidence, the juvenile court concluded that: (1) Child had been removed from Parents for the requisite

period of time; (2) there was a reasonable probability that the conditions that resulted in Child's removal will not be remedied, and the continuation of the parent-child relationship poses a threat to the well-being of Child; (3) that termination of Father's parental rights was in Child's best interests; and (4) adoption by paternal grandmother and her husband is a satisfactory plan for the care and treatment of Child. *Appellant's App. Vol. II* at 101. Father now appeals the termination of his parental rights.

## Discussion and Decision

[16] "Decisions to terminate parental rights are among the most difficult our trial courts are called upon to make. They are also among the most fact-sensitive— so we review them with great deference to the trial courts[.]" *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 640 (Ind. 2014). While the Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his child, the law allows for termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Thus, "parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights." *In Re W.M.L.*, 82 N.E.3d 361, 365 (Ind. Ct. App. 2017). The purpose of terminating parental rights is not to punish the parent but to protect the child. *In re T.F.*, 743 N.E.2d at 773. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.*

The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[17] In reviewing a termination case, we do not reweigh the evidence or judge the credibility of the witnesses. *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). Instead, we consider only the evidence and reasonable inferences that most favor the judgment. *Id.* We will set aside the court's judgment only if it is clearly erroneous. *Id.* at 148-49. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). Where, as here, the juvenile court entered specific findings and conclusions, we apply a two-tiered standard of review. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008), *trans. denied*. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* A finding is clearly erroneous only when the record contains no facts or inferences drawn therefrom that support it. *Id.* If the evidence and inferences support the trial court's decision, we must affirm. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

[18] The controlling statute is Indiana Code section 31-35-2-4(b)(2). It provides in relevant part that, to terminate a parent-child relationship, DCS must file a petition that alleges and proves:

> (B)  that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > . . .
>
> (C)  that termination is in the best interests of the child; and
>
> (D)  that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).  The State's burden of proof is one of clear and convincing evidence.  *Matter of G.M.*, 71 N.E.3d 898, 904-05 (Ind. Ct. App. 2017).  If the juvenile court finds that the allegations in a petition are true, it shall terminate the parent-child relationship.  Ind. Code § 31-35-2-8(a).

### *Findings of Fact*

[19]  Father begins by challenging three of the juvenile court's findings of fact as being unsupported by the evidence.  First, Father argues that it was error for the juvenile court to find, "Mother and Father have not visited the child *since the child's birth*," *Ex. Vol. I* at 33, when the evidence showed that Father had not seen Child *since his August 2016 release from the hospital*.  *Appellant's Br*. at 13

(emphasis added). Child was born July 26, 2016 and was released from the hospital less than three weeks later, on August 13, 2016. *Ex. Vol. I* at 4, 5. If we calculate Father's last visit from August 2016 (instead of July 2016), by the time of the July 2018 termination hearing, Father had not seen Child for twenty-three months, instead of the purported twenty-four months. Assuming without deciding that Father's contention is true, and that Father saw Child twenty-three months ago, the difference of just one month, under the facts of this case, does not affect our analysis.

[20] Second, Father challenges the juvenile court's finding, "Mother and Father have not seen Child since DCS removed Child from parental care." *Appellant's Br.* at 13-14. The evidence supports that Child was formally removed from Parents' care on August 12, 2016, and he was placed with paternal grandmother on August 13, 2016. *Ex. Vol. I* at 4, 5. While DCS acknowledges that Parents could have visited Child during that one day between his formal removal and placement in relative care, Father points to no evidence to support that assertion. The evidence supported this finding; the finding is not clearly erroneous.

[21] Third, Father challenges the juvenile court's finding that he "has had at least 20 years of substance abuse history." *Appellant's Br.* at 14. Father argues that the juvenile court's finding is clearly erroneous because it suggests that he engaged in continuous drug use. *Id.* We disagree with Father's characterization of this finding. The statement that one has a history of drug abuse in no way suggests that the use was continuous. Furthermore, it was Father who volunteered

during the termination hearing that he had "twenty plus years of substance abuse," and, moments later, was able to clarify that his use was "[o]n and off" because he started young. *Tr. Vol. I* at 39-40. The evidence supported the finding; the finding was not clearly erroneous.

### *Remediation of Conditions*

[22] Father contends that the juvenile court erred in concluding that the conditions that led to Child's removal would not be remedied. In determining whether such conditions will not be remedied, the trial court must judge a parent's fitness to care for his child at the time of the termination hearing and consider evidence of changed conditions. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). "However, the trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* (internal quotation marks omitted). Father recognizes that Child was removed from his care because Child was born with drugs in his system and because Father had issues with drug abuse and an inability to maintain appropriate housing. *Appellant's Br.* at 15. Father notes that Child remained out of his care because Father did not engage in services, committed two criminal offenses, and was incarcerated. *Id.* Father argues that he will be released from incarceration "no later than July 16, 2019," which will allow him to care for Child. *Id.* We are not convinced.

[23] By his own admission, Father has had substance abuse issues on and off "for twenty plus years." *Tr. Vol. I* at 39, 40. He has known since at least 2015 that he has a problem with his parenting. Father's prior involvement with DCS

began in August 2015 and pertained to a CHINS proceeding for his one-month-old son E.M. At that time, DCS removed E.M. and ordered Father to engage in services, to address his substance abuse issues, and to refrain from committing any criminal offense. Father did not participate in services, and while E.M.'s CHINS and termination proceedings were pending, Father tested positive for methamphetamine on December 2, 2015, February 3, 2016, and February 17, 2016. *Ex. Vol. I* at 42. Five months before Child was born Father committed burglary. *Id*. at 42, 63. At that time, Father was given a suspended sentence of one year and six months. Even with the grace of probation, Father was unable to change. On November 28, 2017, while both Child and E.M. were in the care of DCS, Father unlawfully possessed a syringe and visited a common nuisance. The trial court sentenced Father to a one-year executed sentence for possession of a syringe and reinstated the previously suspended burglary sentence. Father was ordered to serve an aggregate executed term of two years and six months.

[24] FCM Brittenham testified, "[S]ince [Child's] birth there has been um, no completed services, um, no contact with me to um, when out of incarceration been to the office, they don't call, they haven't um, done anything to get with me to begin that process when they haven't been incarcerated." *Tr. Vol. I* at 50. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, will support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861

N.E.2d 366, 372 (Ind. Ct. App. 2007) (internal quotation marks omitted), *trans. denied*. The juvenile court did not err in concluding that the conditions that resulted in Child's removal and continued placement outside the home will not be remedied by Father.[4]

### *Child's Best Interest*

[25] In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In making this determination, the juvenile court must subordinate the interests of the parent to that of the child. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*. Standing alone, incarceration of a parent is insufficient to support a finding that termination of parental rights is in the best interest of a child. *In re G.Y.*, 904 N.E.2d 1257, 1264-66 (Ind. 2009). However, a parent's historical inability to provide a suitable, stable home environment supports a finding that termination is in the best interests of the child. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Testimony of service providers and evidence that the conditions resulting in removal will not be remedied are sufficient to show by clear and convincing evidence that termination is in the

---

[4] Father also contends the trial court erred by concluding that the continuation of the parent-child relationship poses a threat to Child. Having found conditions will not be remedied we need not reach that issue. *See In re S.P.H.*, 806 N.E.2d 874, 882 (Ind. Ct. App. 2004) (where trial court specifically found there is a reasonable probability that conditions resulting in the removal of the child would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for DCS to prove that continuation of parent-child relationship poses a threat to child).

child's best interests. *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied*. Permanency and stability are key considerations in determining the best interests of a child. *In re K.T.K.*, 989 N.E.2d 1225, 1235 (Ind. 2013).

[26] Father contends that, although he has struggled with substance abuse, "his current incarceration has given him the opportunity to reform this behavior and prepare him to ably parent [Child]." *Appellant's Br.* at 19-20. Father notes that Child will be one of five grandchildren living in his sixty-year-old mother's house. *Id*. at 20. Comparing his circumstances to those of his mother, Father notes that he is thirty-nine years old, and at his home, Child will have "fewer children sharing attention and resources." *Id*.

[27] FCM Brittenham testified that, should Father's parental rights be terminated, it was DCS's plan for Child that he be adopted by his paternal grandmother and her husband, who had adopted his older brother. *Tr. Vol. I* at 54. FCM Brittenham said that she had gone to their home, and she could confirm that there were no issues regarding their "well-being to parent in the future." *Id*. There also were no financial barriers that would prevent them from following through with the adoption. FCM Brittenham testified:

> [D]ue to the history of the drug use um, incarcerations, um, our goal at DCS is [to] provide permanency for children uh, [Child] is now two years old um, for two years he's lived with his grandparents. He came straight home from the hospital to them um, he's with his um, his brother and E. um, and we're just asking that the parental rights be terminated due to needing permanency for [Child].

*Id.*

[28] Here, the totality of the evidence clearly supports the juvenile court's conclusion that termination of Father's parental relationship with Child was in Child's best interests. Father's drug addiction, criminal activities, and failure to comply with court-ordered services underscore his historic inability to provide a suitable, stable home environment and his continuing inability to do so. A parent's failure to demonstrate an ability to effectively use the services recommended to them is sufficient to demonstrate that termination is in the child's best interests. *See In re T.F.*, 743 N.E.2d at 776.

[29] In sum, the juvenile court's findings that there is a reasonable probability that (1) Father will not remedy the conditions resulting in Child's removal; and (2) termination of Father's parental rights is in Child's best interests were not clearly erroneous.

[30] Affirmed.

Riley, J., and Robb, J., concur.